UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARISOL ARROYO-CASTRO<br>            Plaintiff,<br><br>vs.<br><br>ANTHONY GASPER, in his individual and official capacity; MARYELLEN MANNING, in her individual and official capacity; DARIO SOTO, in his individual and official capacity; and ANDREW MAZZEI, in his individual and official capacity,<br>            Defendants. | Civil Action No. 3:25-cv-00153<br><br>**COMPLAINT** |

Plaintiff Marisol Arroyo-Castro, by and through the undersigned counsel, complains and alleges against Anthony Gasper, Dario Soto, Andrew Mazzei, and Maryellen Manning (collectively, "Defendants"), as follows:

## INTRODUCTION

1.      Federal and state law prohibit government officials from using the Establishment Clause as an excuse to abridge the free speech and religious free exercise rights of their employees.  Indeed, fewer than three years ago, in *Kennedy v. Bremerton School District*, the Supreme Court held that a public school violated the Constitution by terminating a football coach for praying in the presence of students when other staff were allowed to engage in their own personal expression.  597 U.S. 507 (2022).  Here, officials of the Consolidated School District of New Britain disregarded the plain import of *Kennedy* and punished Ms. Castro for displaying a crucifix in her personal space by her desk.  Other teachers, meanwhile, display in their classroom workspaces Wonder Woman action figures, images of Baby Yoda and Santa Claus, and other personal expressive items.  Yet only Ms. Castro has been suspended and threatened with termination.  The disparity of treatment here against religious expression makes this an easy case under *Kennedy*: if Defendants permit teachers to display personal expressive items like family

photos and inspirational quotes in their classrooms, they may not punish Ms. Castro for doing the same by hanging a crucifix in the personal workspace aside her desk.

## NATURE OF THE ACTION

2. Plaintiff Marisol Arroyo-Castro brings this action to enjoin Defendants' present violations of her rights to free speech and religious free exercise, and to prevent future infringements on those rights.

3. Defendants have punished and continue to punish Ms. Castro for engaging in private, non-coercive expression—specifically, hanging a crucifix among other personal items on the wall next to her desk—solely because her expression is religious and takes place on school property. This conduct, however, is protected by the First Amendment of the U.S. Constitution and Connecticut's Act Concerning Religious Freedom, Conn. Gen. Stat. § 52-571b(a)–(b) (2018). Ms. Castro's First Amendment rights are and continue to be violated as a result of Defendants imposing upon her an ongoing involuntary administrative leave.[1]

4. Ms. Castro brings this action for prospective injunctive relief against Defendants in their individual and official capacities. Ms. Castro also seeks attorneys fees and costs incurred in defending her constitutional rights as provided by federal law.

## PARTIES

5. Plaintiff Marisol Arroyo-Castro is a grandmother of five who has served as a professional educator for nearly 33 years. She is a resident of the city of New Britain, Connecticut, and a tenured teacher employed by the Consolidated School District of New Britain

---

[1] Ms. Castro was also docked two days' pay for her conduct, as alleged *infra* at ¶ 37. Since Ms. Castro is currently pursuing remedies for that harm through an administrative grievance process, she does not seek such monetary relief in this proceeding at this time. If the administrative process ultimately denies her such relief, Ms. Castro may seek to amend her complaint to seek relief from the Court.

(the "District"). As part of her employment with the District, she has taught various ages and grades at DiLoreto Elementary & Middle School ("DiLoreto") since 2004.

6.      Defendant Anthony Gasper is Superintendent of the Consolidated School District of New Britain. Defendant Gasper serves as the Chief Executive Officer of the Board of the Consolidated School District of New Britain,[2] has unilateral authority over personnel assignments and suspensions in the District,[3] and has the power to commence termination proceedings against tenured public school teachers.[4]

7.      Defendant Maryellen Manning is Chief of Staff for Relationships and Accountability for the District. Defendant Manning is Defendant Gasper's chief subordinate in personnel matters and has policymaking responsibility for the District as to personnel and disciplinary matters.

8.      Defendant Dario Soto is principal of DiLoreto Elementary & Middle School.

9.      Defendant Andrew Mazzei is vice principal of DiLoreto Elementary & Middle School. Defendant Mazzei is Ms. Castro's immediate supervisor.

## JURISDICTION

10.     Ms. Castro brings claims for equitable relief against Defendants under 42 U.S.C. § 1983. This Court thus has original federal-question jurisdiction under 28 U.S.C. § 1331. Ms. Castro also brings claims for equitable relief under Conn. Gen. Stat. § 52-571b(c), over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

---

[2] Conn. Gen. Stat. § 10-157(a).
[3] Consolidated School District of New Britain, Board Policy Statement 2120.00 – Assignment and Organization of Personnel (Approved July 1, 2014), https://www.csdnb.org/pdf/Board-Policies/2000/2120.00-Assignment-Organization-Personnel.pdf.
[4] Conn. Gen. Stat. § 10-151(d).

## VENUE

11.     The events giving rise to Ms. Castro's claims each occurred in the District of Connecticut and thus venue is proper under 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

12.     Ms. Castro is a tenured public-school teacher and grandmother of five who has educated students for over three decades. According to her June 2024 evaluation, she is a "proficient" teacher who "holds [her class] to high expectations" and whose students "showed growth." She has regularly received "proficient" or "exemplary" evaluations.

13.     After many years teaching 4th grade students at DiLoreto, Ms. Castro was assigned at the beginning of the fall 2024 semester to teach 7th grade social studies.

14.     Teachers at DiLoreto are permitted to engage in personal expressive conduct by displaying items, images, or quotes on or in the area immediately around their desks. Examples of personally expressive items immediately around or on the desks of DiLoreto teachers (other than Ms. Castro) include the following:

   a. action figures and images of Wonder Woman;[5]

   b. a desk mat with images of Baby Yoda;[6]

   c. a miniature picture of the Mona Lisa;[7]

   d. a New England Patriots football team pennant;[8]

   e. a Connecticut State University decal;[9]

   f. photos of family and pets;[10]

---

[5] *See* Complaint Exhibit A.1.
[6] *See* Complaint Exhibit A.2.
[7] *See* Complaint Exhibit A.3.
[8] *See* Complaint Exhibit A.4.
[9] *See* Complaint Exhibit A.4.
[10] *See* Complaint Exhibits A.1, A.5, A.6, A.7.

g. inspirational phrases, such as "Yes you can!," "You are loved," "Keep calm and call Wonder Woman," and "Every Day Matters!"[11]; and

h. other items with religious origins or connotations, such as a picture of Santa Claus,[12] a coffee mug with a citation to chapter 31 of the biblical book of Proverbs,[13] a photograph of a statue of the Virgin Mary,[14] and a Christmas tree.[15]

15. For approximately ten years, Ms. Castro has displayed a small crucifix on the wall of her classroom next to her desk:



16. A crucifix is a cross with the figure of Jesus suspended on it.

17. The crucifix hung in a location vis-à-vis Ms. Castro's desk that is analogous to the area where other teachers display their personal items. This year, the crucifix hung to the side of her desk, at the very bottom of an adjacent whiteboard. *See* Complaint Exhibit B. The crucifix

---

[11] *See* Complaint Exhibits A.1, A.2, A.5, A.8.
[12] *See* Complaint Exhibit A.5.
[13] *See* Complaint Exhibit A.7.
[14] *See* Complaint Exhibit A.6.
[15] *See* Complaint Exhibit A.9.

was placed off to the side and below the level of a nearby computer monitor, surrounded by student artwork and a calendar. Ms. Castro also displayed in her room a New York Yankees team pennant.

18.  Ms. Castro sincerely considers the crucifix a part of her personal and religious identity. The crucifix was given to her by the family of a deceased friend who gave it to her as a memento because, as a practicing Catholic, Ms. Castro was particularly likely to treasure it.

19.  Having the crucifix in her view at her desk brought Ms. Castro daily calm. Throughout her school days, looking at the crucifix provided her with peace and strength, especially when the (already stressful) task of teaching young students proved particularly challenging. During her lunch breaks, rather than going to the teachers' lounge, she would remain at her desk, look at the crucifix, and pray.

20.  On December 3, 2024, Defendant Mazzei, in his capacity as vice principal, emailed Ms. Castro the following:

> Hi Ms. Castro, I hope this email finds you well. I wanted to reach out to discuss a concern that has been brought to my attention regarding a cross displayed in your classroom. Please know that this meeting is non-disciplinary in nature and is intended to review district policies to ensure clarity and consistency. If you would like, you are welcome to bring a union representative to the meeting for support. I have scheduled the meeting for Friday at 2:15 in my office….

21.  On Friday, December 6, 2024, Defendant Mazzei, in his capacity as vice principal, met with Ms. Castro per his email of December 3. At the meeting, Defendant Mazzei instructed Ms. Castro to take down the crucifix by the following Monday. Mr. Mazzei confirmed this directive with a follow-up email, which stated as follows:

> Hi Ms. Castro, Thank you for taking the time to meet with me today from 2:18 - 2:35, in a nondisciplinary meeting involving the permanent display of a religious symbol. During the meeting, which was attended by [your union representative], I shared that any permanent displays of religious symbols are prohibited from public schools, based on the First Amendment of the United States Constitution. I shared the cross you have displayed in your classroom behind your desk must be taken

down by Monday. You inquired if you could "think about it or pray on it," which I replied that you could, however, it would not change the outcome of the meeting. Your next question was, "what if I don't take it down?" I replied that it would lead to insubordination and disciplinary measures. I understand that the conversation and situation is difficult and I thank you in advance for complying with the expectation to remove the permanent religious display as public schools may not erect any type of religious display on school property. I will stop by your room on Monday at 8:00 am to observe if the cross is still displayed. Thank you and have a great weekend.

22. Ms. Castro did not take down the crucifix from the wall beside her desk.

23. On Tuesday, December 10, 2024, Ms. Castro met with Defendant Mazzei; Defendant Soto, in his capacity as principal of DiLoreto Elementary & Middle School; and Defendant Manning, in her capacity as the District's Chief of Staff for Relations and Accountability.

24. At the meeting, Defendant Manning directed Ms. Castro to remove the crucifix from the wall beside her desk, saying that a religious item could not be hung on the walls of public-school buildings. Ms. Castro pointed out that other teachers kept their personal items near their desks. But Defendant Manning refused to change her directive.

25. Defendant Manning went on to state that Marisol's employer (i.e., Defendants) would never tell her exactly how to pray and to whom. Yet she went on to suggest that Ms. Castro put the crucifix in a desk drawer, only to be pulled out when Ms. Castro wished to "ground herself."

26. Defendant Soto pressured Ms. Castro to remove the crucifix from the wall by stating his religious opinion that Christians are to worship no "idols" and asking if Ms. Castro wanted to stay "true" to that as a Christian.

27. At the end of the meeting, a compromise was seemingly reached among the participants: Ms. Castro could hang the crucifix in a way that was less visible to students but where Ms. Castro herself could still see it.

28.     Following the meeting, all the attendees walked to Ms. Castro's classroom. There, Defendant Manning told Ms. Castro to attach the crucifix to the underside of her desk, by her legs.  In contrast, other DiLoreto teachers have not been forced to hide their personal items under their desks.

29.     Although shocked, Ms. Castro complied.  See Complaint Exhibit C.

30.     As soon as she put her hand on the crucifix to move it, Ms. Castro felt sick and grew distraught.  The other attendees left her sobbing only minutes before a scheduled parent-teacher conference.

31.     Ms. Castro left the crucifix under the desk that night.  But the next morning, Wednesday, December 11, 2024, Ms. Castro returned the crucifix to its place on the wall.  She did so out of personal conscience and sincere religious conviction that to do otherwise would be an affront to her faith.  Ms. Castro informed the Defendants of her decision.

32.     That same day, Defendant Manning issued a Letter of Reprimand to Ms. Castro stating that her actions were "insubordinate."  *See* Complaint Exhibit D.  Additionally, the letter told her that Defendant Soto would come into her class at the end of the day to "assist [Ms. Castro] with removing the cross from [her] classroom."  Defendant Manning cc'd Defendants Gasper, Soto, and Mazzei, among others. Defendant Manning designated the letter to be included in Ms. Castro's disciplinary file.

33.     When he came into her class, Ms. Castro told Defendant Soto she would not remove the cross.  Defendant Soto stated that she must remove the cross to properly "live out [her] faith" and exhorted her to "give Caesar what is Caesar's."[16]

---

[16] *Mark* 12:17.

34. Defendant Soto then instructed her that if she did not take down the cross, the next morning she should not report to her classroom to teach but rather should come directly to the principal's office to meet. Moreover, he said Ms. Castro could face suspension and eventually termination for being insubordinate. The crucifix remained on the wall when Ms. Castro left her classroom that evening.

35. On Thursday, December 12, 2024, Ms. Castro arrived at school and briefly stopped in her classroom to pick up some personal items. She saw the crucifix had been removed from the wall.

36. Ms. Castro then attended another meeting in the principal's office with Defendants Manning, Soto, and Mazzei. At that meeting, Defendant Manning told Ms. Castro that a few days without pay would help her better "reflect" on whether it was in her "best interest" to keep hanging the crucifix on the wall.

37. Making good on this threat, Defendant Manning issued a Notice of Suspension to Ms. Castro reiterating that her actions were "insubordinate." *See* Complaint Exhibit E. Ms. Castro was suspended without pay for two days and sent home with her crucifix in a box. The Notice stated Ms. Castro could return to work on Monday, December 16, 2024, only under the condition that she agree to remove the crucifix from its location on the wall next to her desk. Defendant Manning cc'd Defendants Gasper, Soto, and Mazzei, among others. Manning designated the Notice to be included in Ms. Castro's disciplinary file.

38. On Monday, December 16, 2024, Ms. Castro emailed the Defendants. She wrote, *inter alia*, that she could not in good conscience return to school under the school's condition that she hide the crucifix:

> On Thursday the 13th, I was suspended until I agreed to return to school but only hang the crucifix in what you all my "private space," *i.e.*, under my desk. I cannot

in good conscience agree to return to school under that condition, which violates not only my faith but also my rights under the First Amendment of the Constitution.

* * *

It is my understanding that your application of the Constitution is not only wrong but quite outdated, particularly in light of some recent Supreme Court decisions. In 2022 in *Kennedy v. Bremerton School District*, the United States Supreme Court made clear that it "long ago abandoned *Lemon* and its endorsement test offshoot," affirming that personal religious expression by public school employees does not violate the Establishment Clause. That same case held that school employees' First Amendment rights receive double protection under the Free Exercise and Free Speech Clauses, and the Court concluded that the football coach's postgame prayer at a time when coaches were free to attend to personal things was constitutionally protected – despite the fact that students could see his private religious expression.

* * *

[G]uidance from President Biden's U.S. Department of Education [in 2023] explains: "In contexts where a school permits teachers, coaches, and other employees to engage in personal speech … it may not prohibit those employees from engaging in prayer [or other personal expression] merely because it is religious or because some observers, including students, might misperceive the school as endorsing that expression."[17]

The crucifix that I hang by my desk does not violate the Establishment Clause. In fact, it is protected by my free exercise and free speech rights. And I am also protected by Connecticut's [Act Concerning Religious Freedom].

39. That same day, Ms. Castro was placed on paid administrative leave.

40. Ms. Castro has been pressured by Defendants to resign or retire early and sign an agreement not to sue the District. Upon information and belief, Defendants Gasper, Manning, Soto, and Mazzei have each been involved in these efforts to pressure Ms. Castro.

41. Defendants Mazzei, Soto, Manning, and Gasper each threatened disciplinary action against Ms. Castro unless she agreed to conceal the crucifix underneath her desk or in a

---

[17] Department of Education, *Guidance on Constitutionally Protected Prayer and Religious Expression in Public Elementary and Secondary Schools* (2023), https://www.ed.gov/laws-and-policy/laws-preschool-grade-12-education/preschool-grade-12-policy-documents/guidance-on-constitutionally-protected-prayer-and-religious-expression-in-public-elementary-and-secondary-schools#:~:text=In%20contexts%20where%20a%20school,school%20as%20endorsing%20that%20expression.

similarly hidden place. In some cases, Defendants explicitly noted the possibility of suspension or termination for insubordination related to Ms. Castro's refusal to remove her crucifix.

42.     Upon information and belief, Defendants have not similarly disciplined other DiLoreto teachers for their personal displays.

43.     Still held on administrative leave, Ms. Castro attended a videoconference on January 24, 2025, with Defendant Gasper, in his capacity as Superintendent of the District; and Defendant Manning. All parties were represented by counsel.

44.     Seven times, Defendant Gasper asked Ms. Castro whether she would continue to refuse to remove or relocate the crucifix to a hidden place in her classroom.[18] And seven times, Ms. Castro confirmed she would not agree to removing or relocating the crucifix within the classroom so long as other teachers were permitted to keep personal expressive items in analogous locations.

45.     Based on Ms. Castro's responses, Defendant Gasper confirmed the imposition of administrative leave, where she remains today.

46.     Ms. Castro and her counsel have repeatedly raised to Defendants Ms. Castro's constitutional rights under *Kennedy v. Bremerton School District* and related law.

47.     As of January 30, 2025, Ms. Castro's school email address was de-activated.

48.     Upon information and belief, Defendants—particularly Defendants Gasper and Manning—are currently engaged in the process of terminating Ms. Castro from employment under the provisions of Conn. Gen. Stat. § 10-151(d).

---

[18] Defendants Gasper and Manning, through counsel, explicitly denied the meeting was held in response to potential litigation and disclaimed the application of Federal Rule of Evidence 408 (Inadmissibility of Compromise Offers and Negotiations).

## CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF FEDERAL CONSTITUTIONAL RIGHT TO FREE EXERCISE AGAINST ALL DEFENDANTS

49. Ms. Castro hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth herein.

50. Defendants, acting under color of state law, have violated and continue to violate Ms. Castro's federal constitutional right to freely exercise her religion, rendering Defendants liable under 42 U.S.C. § 1983.

51. Made applicable to state actors by the Fourteenth Amendment, the First Amendment protects the free exercise of religion. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

52. When the government burdens a person's sincere religious practice in a way that is neither neutral nor generally applicable, the government has violated the U.S. Constitution's free-exercise guarantee unless the government demonstrates that its course was narrowly tailored to pursuing a compelling government interest. *See Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531–32 (1993).

53. Defendants have burdened Ms. Castro's sincere religious practice. For her peace of mind and spirit, Ms. Castro has long placed a crucifix beside her desk. Defendants put her to a choice: remove the crucifix or face discipline. Since Ms. Castro was unwilling to compromise her religious exercise: Defendants Mazzei and Soto began disciplinary proceedings against her; Defendant Manning suspended her without pay for two days and then placed her on indefinite administrative leave; and Defendant Gasper confirmed the administrative leave. Defendants have thus punished and continue to punish Ms. Castro for her religious practice, all for placing a crucifix beside her desk for her personal prayer and reflection.

54. Far from being neutral to religion, Defendants' actions have punished Ms. Castro precisely because of the religious nature of the crucifix.

55. And far from being generally applicable, Defendants' actions have singled out Ms. Castro for discipline despite other teachers having their own personal expressive items (including some with religious origins and connotations) on display.

56. Defendants cannot state a compelling government interest in precluding Ms. Castro from displaying a crucifix in her private workspace. In their communications with Ms. Castro, Defendants have repeatedly stated just one reason for their actions—a concern that Ms. Castro's expression would make the school appear to endorse religion. But the Supreme Court has rejected that erroneous understanding of the Establishment Clause. *See Kennedy*, 597 U.S. at 532–536. And Defendants have offered no other reason, let alone a compelling one, to justify punishing Ms. Castro for displaying a crucifix in her private workspace.

57. Additionally, a free exercise violation occurs when the government has expressed hostility to the religious exercise it burdens. *Id.* at 525 n.1 (quoting *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 639 (2018)).

58. The comments by Defendant Soto particularly evince hostility towards Ms. Castro's Catholic faith. On two occasions, he insinuated her crucifix was an "idol" not fit for worship. When Ms. Castro resisted removing the crucifix, Defendant Soto stated that she must do so to properly "live out [her] faith." He also exhorted her to "give Caesar what is Caesar's."

59. Accordingly, Defendants have violated and continue to violate Ms. Castro's federal constitutional rights to freely exercise her religion. She prays for prospective injunctive relief against all defendants as authorized by 42 U.S.C. § 1983.

60. Furthermore, Defendant Gasper has the unilateral authority to begin termination proceedings against Ms. Castro under the provisions of Conn. Gen. Stat. § 10-151(d).

61. As previously alleged, Defendant Gasper has and continues to violate Ms. Castro's federal constitutional rights to freely exercise her religion. Ms. Castro has a reasonable fear that, absent injunctive relief, Defendant Gasper will initiate termination proceedings against her for insubordination.

62. Ms. Castro thus prays for prospective injunctive relief against Defendant Gasper as authorized by 42 U.S.C. § 1983.

### COUNT II – VIOLATION OF FEDERAL CONSTITUTIONAL RIGHT TO FREE SPEECH AGAINST ALL DEFENDANTS

63. Ms. Castro hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth herein.

64. Defendants, acting under color of state law, have violated and continue to violate Ms. Castro's federal constitutional right to free speech, rendering Defendants liable under 42 U.S.C. § 1983.

65. Made applicable to state actors by the Fourteenth Amendment, the First Amendment protects freedom of speech. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925).

66. Religious expression is protected by the Free Speech Clause of the First Amendment. *Kennedy*, 597 U.S. at 523–524.

67. Public employees such as school teachers retain free speech rights to personal expression even when on school grounds and during teaching hours. Government officials violate those rights when they prohibit private expression without adequate justification. *Kennedy*, 597 U.S. at 527–528.

68. Expression is private when it is not within the ordinary scope of duty or otherwise does not owe its existence to the government. *Id.* at 529.

69. Defendants unconstitutionally prohibited Ms. Castro from displaying her crucifix in her personal space, a prototypical act of private speech.

70. Defendants have not offered a valid justification for suppressing Ms. Castro's private speech. Erroneous over-enforcement of the Establishment Clause is not a valid justification for restricting private religious speech. *See id.* at 532–536. Nor is a concern that students or other staff would take offense at the sight of religious expression. *Id.* at 538.

71. Accordingly, Defendants have violated and continue to violate Ms. Castro's federal constitutional rights to free speech. She prays for prospective injunctive relief against all defendants as authorized by 42 U.S.C. § 1983.

72. Furthermore, Defendant Gasper has the unilateral authority to begin termination proceedings against Ms. Castro under the provisions of Conn. Gen. Stat. § 10-151(d).

73. As previously alleged, Defendant Gasper has and continues to violate Ms. Castro's federal constitutional rights to free speech. Ms. Castro has a reasonable fear that, absent injunctive relief, Defendant Gasper will initiate termination proceedings against her for insubordination.

74. Ms. Castro thus prays for prospective injunctive relief against Defendant Gasper as authorized by 42 U.S.C. § 1983.

> **COUNT III – VIOLATION OF CONNECTICUT'S ACT CONCERNING RELIGIOUS FREEDOM AGAINST ALL DEFENDANTS**

75. Ms. Castro hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth herein.

76. By statute, Connecticut prohibits all its political subdivisions—including their officers or employees—from burdening someone's religious exercise, unless the government actor demonstrates that it has used "the least restrictive means" of furthering "a compelling government interest." Conn. Gen. Stat. § 52-571b(a)–(b), (f).

77. Defendants have burdened Ms. Castro's sincere religious practice. For her peace of mind and spirit, Ms. Castro has long placed a crucifix beside her desk. The District put her to a choice: remove the crucifix or face discipline. Since Ms. Castro was unwilling to compromise her religious exercise: Defendants Mazzei and Soto began disciplinary proceedings against her; Defendant Manning suspended her without pay for two days and then placed her on indefinite administrative leave; and Defendant Gasper confirmed the administrative leave. Defendants have thus punished and continue to punish Ms. Castro for her religious practice, all for placing a crucifix beside her desk for her personal prayer and reflection.

78. Defendants cannot state a compelling government interest in precluding Ms. Castro from displaying a crucifix in her private workspace. In their communications with Ms. Castro, Defendants have repeatedly stated just one reason for their actions—a concern that Ms. Castro's expression would make the school appear to endorse religion. But the Supreme Court has rejected that erroneous understanding of the Establishment Clause. *See Kennedy*, 597 U.S. at 532–536. And Defendants have offered no other reason, let alone a compelling one, to justify punishing Ms. Castro for displaying a crucifix in her private workspace.

79. Accordingly, Defendants have and continue to violate Connecticut's Act Concerning Religious Freedom.

80. Ms. Castro prays for prospective injunctive relief against all defendants as authorized by Conn. Gen. Stat. § 52-571b(c), (f).

81. Furthermore, Defendant Gasper has the unilateral authority to begin termination proceedings against Ms. Castro under the provisions of Conn. Gen. Stat. § 10-151(d).

82. As previously alleged, Defendant Gasper has and continues to violate Connecticut's Act Concerning Religious Freedom. Ms. Castro has a reasonable fear that, absent injunctive relief, Defendant Gasper will initiate termination proceedings against her.

83. Ms. Castro thus prays for prospective injunctive relief against Defendant Gasper as authorized by Conn. Gen. Stat. § 52-571b(c), (f).

## REQUEST FOR ATTORNEYS FEES & COSTS

84. Ms. Castro is entitled to recover reasonable attorneys fees and costs under 42 U.S.C. § 1988(b), in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Castro hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth herein, and prays for relief as follows:

- Equitable relief enjoining Defendants or their agents from suspending, re-assigning, or otherwise disciplining Ms. Castro in any way for hanging her crucifix on her classroom wall aside her desk, in the same location as it was prior;

- A mandatory injunction against Defendants and their agents requiring them to take Ms. Castro off of administrative leave and assign her to return to full-time teaching, without any condition that she cease hanging her crucifix on her classroom wall aside her desk in the same location as it was prior;

- A mandatory injunction against Defendants and their agents requiring them to expunge any and all disciplinary records from Ms. Castro's files concerning her refusal to cease hanging her crucifix on her classroom wall aside her desk;

- Equitable relief enjoining Defendants and their agents from participating in any process of terminating Ms. Castro's contract as a tenured teacher with the Consolidated School District of New Britain based on her display of a crucifix;

- A declaratory judgment that the actions of Defendants and their agents in disciplining Ms. Castro for her refusal to remove the crucifix from the wall aside her desk violate the United States Constitution and Connecticut law;

- Costs & attorneys fees;

- Any other relief deemed appropriate by this Court.


01/30/2025

By:   /s/ A. William Caporizzo
A. William Caporizzo, Bar No. 207995
*of attorneys for Plaintiff Marisol Arroyo-Castro*


A. William Caporizzo, Bar No. 207995
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: 617-526-6411
Facsimile: 1 617-526-5000
william.caporizzo@wilmerhale.com

Matthew Martens (*pro hac vice* forthcoming)
Alyssa DaCunha (*pro hac vice* forthcoming)
Jonathan Ellison (*pro hac vice* forthcoming)
Paul Piazza (*pro hac vice* forthcoming)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: 202-663-6921
matthew.martens@wilmerhale.com
alyssa.dacunha@wilmerhale.com

Jeremiah G. Dys (*pro hac vice* forthcoming)
Keisha T. Russell (*pro hac vice* forthcoming)
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Telephone: 972-941-4444
krussell@firstliberty.org

Rebecca R. Dummermuth (*pro hac vice* forthcoming)
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave., N.W., Suite 1410
Washington, D.C. 20004
Telephone: 202-921-4105