UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARISOL ARROYO-CASTRO<br>Plaintiff,<br><br>vs.<br><br>ANTHONY GASPER, in his individual and official capacity; MARYELLEN MANNING, in her individual and official capacity; DARIO SOTO, in his individual and official capacity; and ANDREW MAZZEI, in his individual and official capacity,<br>Defendants. | Civil Action No. 3:25-cv-00153<br><br><br>ANSWER AND AFFIRMATIVE DEFENSES |

Defendants Anthony Gasper, Maryellen Manning, Dario Soto, and Andrew Mazzei

(collectively "Defendants"), by and through their attorneys, answer and respond to plaintiff

Marisol Arroyo-Castro's Complaint as follows:

## **INTRODUCTION**

1.       Federal and state law prohibit government officials from using the Establishment Clause as an excuse to abridge the free speech and religious free exercise rights of their employees.  Indeed, fewer than three years ago, in *Kennedy v. Bremerton School District*, the Supreme Court held that a public school violated the Constitution by terminating a football coach for praying in the presence of students when other staff were allowed to engage in their own personal expression.  597 U.S. 507 (2022).  Here, officials of the Consolidated School District of New Britain disregarded the plain import of *Kennedy* and punished Ms. Castro for displaying a crucifix in her personal space by her desk.  Other teachers, meanwhile, display in their classroom workspaces Wonder Woman action figures, images of Baby Yoda and Santa Claus, and other personal expressive items.  Yet only Ms. Castro has been suspended and threatened with termination.  The disparity of treatment here against religious expression makes this an easy case under *Kennedy*: if Defendants permit teachers to display personal expressive items like family photos and inspirational quotes in their classrooms, they may not punish Ms. Castro for doing the same by hanging a crucifix in the personal workspace aside her desk.

ANSWER: Paragraph 1 of the Complainant is an improper introductory argument, to which no

response is required.  To the extent a response is necessary, Defendants deny that they violated

Plaintiff's rights and deny that Plaintiff is entitled to any relief whatsoever.

## NATURE OF THE ACTION

2.      Plaintiff Marisol Arroyo-Castro brings this action to enjoin Defendants' present violations of her rights to free speech and religious free exercise, and to prevent future infringements on those rights.

ANSWER:      Defendants deny that they have violated Plaintiff's rights, and therefore deny

Paragraph 2.

3.      Defendants have punished and continue to punish Ms. Castro for engaging in private, non-coercive expression—specifically, hanging a crucifix among other personal items on the wall next to her desk—solely because her expression is religious and takes place on school property.  This conduct, however, is protected by the First Amendment of the U.S. Constitution and Connecticut's Act Concerning Religious Freedom, Conn. Gen. Stat. § 52-571b(a)–(b) (2018). Ms. Castro's First Amendment rights are and continue to be violated as a result of Defendants imposing upon her an ongoing involuntary administrative leave.

ANSWER:      Denied.

4.      Ms. Castro brings this action for prospective injunctive relief against Defendants in their individual and official capacities.  Ms. Castro also seeks attorneys fees and costs incurred in defending her constitutional rights as provided by federal law.

ANSWER:      Defendants deny that they have violated Plaintiff's rights, and therefore deny that Plaintiff is entitle to any of the relief requested in Paragraph 4.

## PARTIES

5.      Plaintiff Marisol Arroyo-Castro is a grandmother of five who has served as a professional educator for nearly 33 years.  She is a resident of the city of New Britain, Connecticut, and a tenured teacher employed by the Consolidated School District of New Britain. (the "District").  As part of her employment with the District, she has taught various ages and grades at DiLoreto Elementary & Middle School ("DiLoreto") since 2004.

ANSWER:      Defendants admit that Plaintiff is a tenured teacher employed by the Consolidated School District of New Britain, and that she has taught various ages and grades at DiLoreto Elementary & Middle School since 2004.  Defendants have insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 5.

6.      Defendant Anthony Gasper is Superintendent of the Consolidated School District of New Britain. Defendant Gasper serves as the Chief Executive Officer of the Board of the Consolidated School District of New Britain,[2] has unilateral authority over personnel

22228075

assignments and suspensions in the District,[3] and has the power to commence termination proceedings against tenured public school teachers.[4]

<u>ANSWER:</u>     Admitted.

7.     Defendant Maryellen Manning is Chief of Staff for Relationships and Accountability for the District.  Defendant Manning is Defendant Gasper's chief subordinate in personnel matters and has policymaking responsibility for the District as to personnel and disciplinary matters.

<u>ANSWER:</u>     Defendants admit the allegations in Paragraph 7, except deny that Ms. Manning has "policymaking responsibility for the District as to personnel and disciplinary matters."

8.     Defendant Dario Soto is principal of DiLoreto Elementary & Middle School.

<u>ANSWER:</u>     Admitted.

9.     Defendant Andrew Mazzei is vice principal of DiLoreto Elementary & Middle School.  Defendant Mazzei is Ms. Castro's immediate supervisor.

<u>ANSWER:</u>     Admitted with the clarification that Mr. Mazzei's title is Assistant Principal Middle School.

## JURISDICTION

10.     Ms. Castro brings claims for equitable relief against Defendants under 42 U.S.C. § 1983.  This Court thus has original federal-question jurisdiction under 28 U.S.C. § 1331.  Ms. Castro also brings claims for equitable relief under Conn. Gen. Stat. § 52-571b(c), over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

<u>ANSWER:</u>     Defendants do not challenge this Court's jurisdiction, and therefore admit Paragraph 10 but deny any implication that Plaintiff is entitled to relief from this Court.

## VENUE

11.     The events giving rise to Ms. Castro's claims each occurred in the District of Connecticut and thus venue is proper under 28 U.S.C. § 1391(b)(2).

<u>ANSWER:</u>     Defendants do not challenge venue in this District, and therefore admit Paragraph 11 but deny any implication that Plaintiff is entitled to relief from this Court.

## FACTUAL BACKGROUND

12.     Ms. Castro is a tenured public-school teacher and grandmother of five who has educated students for over three decades.  According to her June 2024 evaluation, she is a

"proficient" teacher who "holds [her class] to high expectations" and whose students "showed growth." She has regularly received "proficient" or "exemplary" evaluations.

ANSWER:     Defendants admit that Plaintiff is a tenured public-school teacher and that the quoted language in contained in her June 2024 evaluation, among other things. That evaluation speaks for itself in its entirety. Defendants have insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 12.

13.     After many years teaching 4th grade students at DiLoreto, Ms. Castro was assigned at the beginning of the fall 2024 semester to teach 7th grade social studies.

ANSWER:     Defendants admit that Plaintiff was assigned to teach 7th grade social studies for the 2024-2025 school year, after having taught third grade for the prior six years. Defendants admit that Plaintiff taught fourth grade in the past, but deny Ms. Castro taught 4th grade immediately prior to her assignment.

14.     Teachers at DiLoreto are permitted to engage in personal expressive conduct by displaying items, images, or quotes on or in the area immediately around their desks. Examples of personally expressive items immediately around or on the desks of DiLoreto teachers (other than Ms. Castro) include the following:

  a.     action figures and images of Wonder Woman;[5]

  b.     a desk mat with images of Baby Yoda;[6]

  c.     a miniature picture of the Mona Lisa;[7]

  d.     a New England Patriots football team pennant;[8]

  e.     a Connecticut State University decal;[9]

  f.     photos of family and pets;[10]

  g.     inspirational phrases, such as "Yes you can!," "You are loved," "Keep calm and call Wonder Woman," and "Every Day Matters!"[11]; and

  h.     other items with religious origins or connotations, such as a picture of Santa Claus,[12] a coffee mug with a citation to chapter 31 of the biblical book of Proverbs,[13] a photograph of a statue of the Virgin Mary,[14] and a Christmas tree.[15]

ANSWER:     Defendants admit that teachers generally have been permitted to display some personal items in their classrooms or work areas, but have insufficient knowledge or information, apart from the photographs attached to the complaint, to admit or deny whether any particular employee displayed any such item in that employee's work area, when, or where. Defendants have insufficient knowledge or information to admit or deny that by doing

so, these employees categorically have intended to engage in "personal expressive conduct," or for these displays to be "personal expressive items," although Defendants understand Plaintiff to be taking these positions about the crucifix that she hung on the front wall of the classroom where she taught in the fall of 2024. Defendants deny any implication that such displays are immune from oversight by supervisors, and deny any implication from the allegations in Paragraph 14 that the District or its officials or employees treated Plaintiff impermissibly by instructing her to take down the crucifix from the wall or by disciplining her when she refused to do so.

15. For approximately ten years, Ms. Castro has displayed a small crucifix on the wall of her classroom next to her desk:



ANSWER:    Defendants have insufficient knowledge or information on which to admit or deny whether Plaintiff displayed a cross in prior years, but admit she displayed it in the fall semester of the 2024-2025 school year.  Defendants deny the allegation that the cross depicted in Paragraph 15 is "small," and further deny that the picture in Paragraph 15 accurately depicts Plaintiff's room in school years prior to 2024-2025.

16. A crucifix is a cross with the figure of Jesus suspended on it.

ANSWER:    Admitted.

17. The crucifix hung in a location vis-à-vis Ms. Castro's desk that is analogous to the area where other teachers display their personal items. This year, the crucifix hung to the side of her desk, at the very bottom of an adjacent whiteboard. *See* Complaint Exhibit B. The crucifix was placed off to the side and below the level of a nearby computer monitor, surrounded by student artwork and a calendar. Ms. Castro also displayed in her room a New York Yankees team pennant.

ANSWER:    Defendants admit that the crucifix was placed on a whiteboard on the front wall of Plaintiff's classroom, which was near her desk, among other items such as a calendar and student artwork. Defendants further admit that Plaintiff had a New York Yankees pennant in her classroom. Defendants have insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 17, which are based on Plaintiff's own thoughts and beliefs. Defendants deny any implication that the crucifix was not visible to students.

18.    Ms. Castro sincerely considers the crucifix a part of her personal and religious identity. The crucifix was given to her by the family of a deceased friend who gave it to her as a memento because, as a practicing Catholic, Ms. Castro was particularly likely to treasure it.

ANSWER:    Defendants have insufficient knowledge or information to admit or deny the allegations in Paragraph 18.

19.    Having the crucifix in her view at her desk brought Ms. Castro daily calm. Throughout her school days, looking at the crucifix provided her with peace and strength, especially when the (already stressful) task of teaching young students proved particularly challenging. During her lunch breaks, rather than going to the teachers' lounge, she would remain at her desk, look at the crucifix, and pray.

ANSWER:    Defendants have insufficient knowledge or information to admit or deny the allegations in Paragraph 19, except admit that Plaintiff had the ability to remain at her desk during lunch breaks and pray if she chose to, with or without her crucifix.

20.    On December 3, 2024, Defendant Mazzei, in his capacity as vice principal, emailed Ms. Castro the following:

Hi Ms. Castro, I hope this email finds you well. I wanted to reach out to discuss a concern that has been brought to my attention regarding a cross displayed in your classroom. Please know that this meeting is non-disciplinary in nature and is intended to review district policies to ensure clarity and consistency. If you would like, you are welcome to bring a union representative to the meeting for support. I have scheduled the meeting for Friday at 2:15 in my office....

ANSWER:    Defendants admit that Paragraph 20 accurately quotes a portion of Mr. Mazzei's December 3, 2024 email to Ms. Castro, which speaks for itself.

21.    On Friday, December 6, 2024, Defendant Mazzei, in his capacity as vice principal, met with Ms. Castro per his email of December 3. At the meeting, Defendant Mazzei instructed Ms. Castro to take down the crucifix by the following Monday. Mr. Mazzei confirmed this directive with a follow-up email, which stated as follows:

Hi Ms. Castro, Thank you for taking the time to meet with me today from 2:18 - 2:35, in a nondisciplinary meeting involving the permanent display of a religious

symbol. During the meeting, which was attended by [your union representative], I shared that any permanent displays of religious symbols are prohibited from public schools, based on the First Amendment of the United States Constitution. I shared the cross you have displayed in your classroom behind your desk must be taken down by Monday. You inquired if you could "think about it or pray on it," which I replied that you could, however, it would not change the outcome of the meeting. Your next question was, "what if I don't take it down?" I replied that it would lead to insubordination and disciplinary measures. I understand that the conversation and situation is difficult and I thank you in advance for complying with the expectation to remove the permanent religious display as public schools may not erect any type of religious display on school property. I will stop by your room on Monday at 8:00 am to observe if the cross is still displayed. Thank you and have a great weekend.

ANSWER:    Defendants admit that Mr. Mazzei met with Plaintiff on December 6, 2025, and instructed her to take the crucifix down by Monday, and further admit that Paragraph 21 accurately quotes a portion of Ms. Mazzei's December 6, 2025 email to Plaintiff, which speaks for itself.

22.    Ms. Castro did not take down the crucifix from the wall beside her desk.

ANSWER:    Defendants admit that Plaintiff did not take the crucifix down from the front wall of her classroom.

23.    On Tuesday, December 10, 2024, Ms. Castro met with Defendant Mazzei; Defendant Soto, in his capacity as principal of DiLoreto Elementary & Middle School; and Defendant Manning, in her capacity as the District's Chief of Staff for Relations and Accountability.

ANSWER:    Defendants admit the allegations in Paragraph 23.

24.    At the meeting, Defendant Manning directed Ms. Castro to remove the crucifix from the wall beside her desk, saying that a religious item could not be hung on the walls of public-school buildings. Ms. Castro pointed out that other teachers kept their personal items near their desks. But Defendant Manning refused to change her directive.

ANSWER:    Defendants admit that that Plaintiff was instructed to remove the crucifix from the front wall in her public-school classroom, and was informed that the crucifix could not be hung on the front wall in her classroom. Defendants admit the final two sentences of Paragraph 24.

25.    Defendant Manning went on to state that Marisol's employer (i.e., Defendants) would never tell her exactly how to pray and to whom. Yet she went on to suggest that Ms.

Castro put the crucifix in a desk drawer, only to be pulled out when Ms. Castro wished to "ground herself."

ANSWER:    Defendants admit that they would never tell Plaintiff how to pray or to whom, and that they did not do that in the December 10, 2024 meeting.  Defendants further admit that they had an interactive discussion with Plaintiff about what she could do with the crucifix, and that putting it in the desk drawer and taking it out when she wished to pray on a break was one of the options discussed by the parties. Defendants clarify Plaintiff is employed by the New Britain Board of Education.

26.    Defendant Soto pressured Ms. Castro to remove the crucifix from the wall by stating his religious opinion that Christians are to worship no "idols" and asking if Ms. Castro wanted to stay "true" to that as a Christian.

ANSWER:    Defendants admit that Principal Soto discussed the crucifix with Plaintiff, but deny that the remaining allegations in Paragraph 26 accurately reflect that conversation.

27.    At the end of the meeting, a compromise was seemingly reached among the participants: Ms. Castro could hang the crucifix in a way that was less visible to students but where Ms. Castro herself could still see it.

ANSWER:    Defendants admit that, after Plaintiff had a chance to talk privately with her union representative, this meeting's participants seemingly reached the compromise that, at the union representative's suggestion, which the District seconded, would have allowed Ms. Castro to hang the crucifix below her desk, where it would not be visible to students.

28.    Following the meeting, all the attendees walked to Ms. Castro's classroom. There, Defendant Manning told Ms. Castro to attach the crucifix to the underside of her desk, by her legs.  In contrast, other DiLoreto teachers have not been forced to hide their personal items under their desks.

ANSWER:    Defendants admit that the parties walked to Plaintiff's classroom at the suggestion of Plaintiff's union representative, and in the classroom they discussed the suggestion from Plaintiff and her union representative that she attach the crucifix on the underside of her desk, by her legs.  Defendants have insufficient knowledge to admit or deny the final sentence of Paragraph 28, which is vague.

29.    Although shocked, Ms. Castro complied.  See Complaint Exhibit C.

ANSWER:    Defendants admit that Plaintiff agreed to place the crucifix on the underside of her desk, as suggested by her union representative. Defendants have insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 29.

30.     As soon as she put her hand on the crucifix to move it, Ms. Castro felt sick and grew distraught.  The other attendees left her sobbing only minutes before a scheduled parent-teacher conference.

ANSWER:     Defendants have insufficient knowledge or information to admit or deny the allegations in Paragraph 30, which are based on Plaintiff's own thoughts and beliefs, but admit that Plaintiff was emotional at the end of the meeting.

31.     Ms. Castro left the crucifix under the desk that night.  But the next morning, Wednesday, December 11, 2024, Ms. Castro returned the crucifix to its place on the wall.  She did so out of personal conscience and sincere religious conviction that to do otherwise would be an affront to her faith.  Ms. Castro informed the Defendants of her decision.

ANSWER:     Defendants admit that the next day Plaintiff rejected the compromise previously suggested by her union representative and retuned the crucifix to the wall in her public-school classroom.  Defendants have insufficient knowledge or information upon which to admit or deny the remaining allegations in Paragraph 31.

32.     That same day, Defendant Manning issued a Letter of Reprimand to Ms. Castro stating that her actions were "insubordinate."  *See* Complaint Exhibit D.  Additionally, the letter told her that Defendant Soto would come into her class at the end of the day to "assist [Ms. Castro] with removing the cross from [her] classroom."  Defendant Manning cc'd Defendants Gasper, Soto, and Mazzei, among others. Defendant Manning designated the letter to be included in Ms. Castro's disciplinary file.

ANSWER:     Defendants admit that Plaintiff was issued a letter of reprimand for insubordination on December 11, 2024, and that the quoted language in Paragraph 32 is contained in the letter of reprimand, which speaks for itself in its entirety.

33.     When he came into her class, Ms. Castro told Defendant Soto she would not remove the cross.  Defendant Soto stated that she must remove the cross to properly "live out [her] faith" and exhorted her to "give Caesar what is Caesar's."[16]

ANSWER:     Defendants admit the first sentence of Paragraph 33.  Defendants admit that Principal Soto said "give Caesar what is Caesar's," but deny that phrase was used in the way alleged in Paragraph 33 during the conversation between Principal Soto and Plaintiff about their shared Christian faith.

34.     Defendant Soto then instructed her that if she did not take down the cross, the next morning she should not report to her classroom to teach but rather should come directly to the principal's office to meet.  Moreover, he said Ms. Castro could face suspension and eventually termination for being insubordinate.  The crucifix remained on the wall when Ms. Castro left her classroom that evening.

ANSWER:     Admitted.

35.    On Thursday, December 12, 2024, Ms. Castro arrived at school and briefly stopped in her classroom to pick up some personal items.  She saw the crucifix had been removed from the wall.

ANSWER:    Defendants admit that the crucifix was removed from the classroom wall. Defendants have insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 35.

36.    Ms. Castro then attended another meeting in the principal's office with Defendants Manning, Soto, and Mazzei.  At that meeting, Defendant Manning told Ms. Castro that a few days without pay would help her better "reflect" on whether it was in her "best interest" to keep hanging the crucifix on the wall.

ANSWER:    Defendants admit that Plaintiff met with Chief of Staff Manning, Principal Soto, and Assistant Principal Mazzei.  Defendants deny the remaining allegations in Paragraph 36, which inaccurately reflect the conversation in that meeting.

37.    Making good on this threat, Defendant Manning issued a Notice of Suspension to Ms. Castro reiterating that her actions were "insubordinate."  *See* Complaint Exhibit E.  Ms. Castro was suspended without pay for two days and sent home with her crucifix in a box.  The Notice stated Ms. Castro could return to work on Monday, December 16, 2024, only under the condition that she agree to remove the crucifix from its location on the wall next to her desk. Defendant Manning cc'd Defendants Gasper, Soto, and Mazzei, among others. Manning designated the Notice to be included in Ms. Castro's disciplinary file.

ANSWER:    Defendants deny that Ms. Manning "threatened" Plaintiff.  Defendants admit that the District issued Plaintiff a notice of 2-day suspension, which speaks for itself. Defendants admit the remaining allegations in paragraph 37.

38.    On Monday, December 16, 2024, Ms. Castro emailed the Defendants.  She wrote, *inter alia*, that she could not in good conscience return to school under the school's condition that she hide the crucifix:

> On Thursday the 13th, I was suspended until I agreed to return to school but only hang the crucifix in what you all my "private space," *i.e.*, under my desk. I cannot in good conscience agree to return to school under that condition, which violates not only my faith but also my rights under the First Amendment of the Constitution.
>
> * * *
>
> It is my understanding that your application of the Constitution is not only wrong but quite outdated, particularly in light of some recent Supreme Court decisions. In 2022 in *Kennedy v. Bremerton School District*, the United States Supreme Court made clear that it "long ago abandoned *Lemon* and its endorsement test

offshoot," affirming that personal religious expression by public school employees does not violate the Establishment Clause. That same case held that school employees' First Amendment rights receive double protection under the Free Exercise and Free Speech Clauses, and the Court concluded that the football coach's postgame prayer at a time when coaches were free to attend to personal things was constitutionally protected – despite the fact that students could see his private religious expression.

\* \* \*

[G]uidance from President Biden's U.S. Department of Education [in 2023] explains: "In contexts where a school permits teachers, coaches, and other employees to engage in personal speech … it may not prohibit those employees from engaging in prayer [or other personal expression] merely because it is religious or because some observers, including students, might misperceive the school as endorsing that expression."[17]

The crucifix that I hang by my desk does not violate the Establishment Clause. In fact, it is protected by my free exercise and free speech rights. And I am also protected by Connecticut's [Act Concerning Religious Freedom].

<u>ANSWER:</u>    Defendants admit that the above accurately quotes the email sent by Plaintiff, which speaks for itself in its entirety.  Defendants deny that they required Plaintiff "to hide" the crucifix.

39.    That same day, Ms. Castro was placed on paid administrative leave.

<u>ANSWER:</u>    Admitted

40.    Ms. Castro has been pressured by Defendants to resign or retire early and sign an agreement not to sue the District.  Upon information and belief, Defendants Gasper, Manning, Soto, and Mazzei have each been involved in these efforts to pressure Ms. Castro.

<u>ANSWER:</u>    Defendants deny the allegations in Paragraph 40, as none of the named defendants have had a conversation with Plaintiff about resignation or retirement, much less pressured her to resign or retire.

41.    Defendants Mazzei, Soto, Manning, and Gasper each threatened disciplinary action against Ms. Castro unless she agreed to conceal the crucifix underneath her desk or in a similarly hidden place.  In some cases, Defendants explicitly noted the possibility of suspension or termination for insubordination related to Ms. Castro's refusal to remove her crucifix.

<u>ANSWER:</u>    Defendants deny that they "threatened" Plaintiff.  Defendants admit the allegations in the second sentence of Paragraph 41.

42.     Upon information and belief, Defendants have not similarly disciplined other DiLoreto teachers for their personal displays.

ANSWER:     Because no teachers have displayed crucifixes in their classrooms at DiLoreto, Defendants admit that they have not had occasion to issue discipline for such actions. Defendants have insufficient knowledge or information to admit or deny any remaining allegations in Paragraph 42.

43.     Still held on administrative leave, Ms. Castro attended a videoconference on January 24, 2025, with Defendant Gasper, in his capacity as Superintendent of the District; and Defendant Manning. All parties were represented by counsel.

ANSWER:     Admitted.

44.     Seven times, Defendant Gasper asked Ms. Castro whether she would continue to refuse to remove or relocate the crucifix to a hidden place in her classroom. And seven times, Ms. Castro confirmed she would not agree to removing or relocating the crucifix within the classroom so long as other teachers were permitted to keep personal expressive items in analogous locations.

ANSWER:     Defendants admit that Superintendent Gasper and Chief of Staff Manning met with Plaintiff in an attempt to reach a resolution and return Plaintiff to the classroom, and in that meeting asked Plaintiff seven questions about her return and possible accommodations related to the crucifix, all of which were rejected by Plaintiff.

45.     Based on Ms. Castro's responses, Defendant Gasper confirmed the imposition of administrative leave, where she remains today.

ANSWER:     Admitted.

46.     Ms. Castro and her counsel have repeatedly raised to Defendants Ms. Castro's constitutional rights under *Kennedy v. Bremerton School District* and related law.

ANSWER:     Defendants admit that Plaintiff and her counsel reference *Kennedy v. Bremerton School District*, but deny implication that Plaintiff's rights were violated.

47.     As of January 30, 2025, Ms. Castro's school email address was de-activated.

ANSWER:     Defendants admit that Plaintiff's access to email was deactivated due to her placement on administrative leave but was reactivated when moved to a temporary assignment.

48.     Upon information and belief, Defendants—particularly Defendants Gasper and Manning—are currently engaged in the process of terminating Ms. Castro from employment under the provisions of Conn. Gen. Stat. § 10-151(d).

ANSWER:    Defendants denies the allegations that § 10-151 proceedings have been initiated.

CLAIMS FOR RELIEF

**COUNT I – VIOLATION OF FEDERAL CONSTITUTIONAL RIGHT TO FREE EXERCISE AGAINST ALL DEFENDANTS**

49.    Ms. Castro hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth herein.

ANSWER:    Defendants restate and reincorporate by reference all of its forgoing answers and responses to the preceding paragraphs of the Complaint as if set forth herein.

50.    Defendants, acting under color of state law, have violated and continue to violate Ms. Castro's federal constitutional right to freely exercise her religion, rendering Defendants liable under 42 U.S.C. § 1983.

ANSWER:    Denied.

51.    Made applicable to state actors by the Fourteenth Amendment, the First Amendment protects the free exercise of religion. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

ANSWER:    Defendants admit that the First Amendment applies to state actors, but deny that Defendants have violated Plaintiff's rights under this or any provision.

52.    When the government burdens a person's sincere religious practice in a way that is neither neutral nor generally applicable, the government has violated the U.S. Constitution's free-exercise guarantee unless the government demonstrates that its course was narrowly tailored to pursuing a compelling government interest. *See Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531–32 (1993).

ANSWER:    Paragraph 56 of the Complainant is an improper argument, to which no response is required. To the extent a response is required, Defendants note that the cited decisional law speaks for itself, note that its proper interpretation is a matter for the courts, and deny that Defendants have violated Plaintiff's rights under this or any legal standard.

53.    Defendants have burdened Ms. Castro's sincere religious practice. For her peace of mind and spirit, Ms. Castro has long placed a crucifix beside her desk. Defendants put her to a choice: remove the crucifix or face discipline. Since Ms. Castro was unwilling to compromise her religious exercise: Defendants Mazzei and Soto began disciplinary proceedings against her; Defendant Manning suspended her without pay for two days and then placed her on indefinite administrative leave; and Defendant Gasper confirmed the

13

administrative leave.  Defendants have thus punished and continue to punish Ms. Castro for her religious practice, all for placing a crucifix beside her desk for her personal prayer and reflection.

ANSWER:    Defendants admit that Plaintiff was required to move the crucifix off the classroom wall, that Plaintiff would not remove the crucifix from the classroom wall, that Plaintiff was suspended without pay for two days, and that Plaintiff was placed on paid administrative leave.  Defendants deny the remaining allegations in Paragraph 53, except for having insufficient knowledge or information to admit or the deny that paragraph's second sentence.

54.    Far from being neutral to religion, Defendants' actions have punished Ms. Castro precisely because of the religious nature of the crucifix.

ANSWER:    Denied.

55.    And far from being generally applicable, Defendants' actions have singled out Ms. Castro for discipline despite other teachers having their own personal expressive items (including some with religious origins and connotations) on display.

ANSWER:    Denied.

56.    Defendants cannot state a compelling government interest in precluding Ms. Castro from displaying a crucifix in her private workspace.  In their communications with Ms. Castro, Defendants have repeatedly stated just one reason for their actions—a concern that Ms. Castro's expression would make the school appear to endorse religion.  But the Supreme Court has rejected that erroneous understanding of the Establishment Clause.  *See Kennedy*, 597 U.S. at 532–536.  And Defendants have offered no other reason, let alone a compelling one, to justify punishing Ms. Castro for displaying a crucifix in her private workspace.

ANSWER:    Paragraph 56 of the Complaint is an improper argument, to which no response is required.  To the extent a response is necessary, Defendants deny that they violated Plaintiff's rights, and deny that Paragraph 56 accurately summarizes Defendants' communications to Plaintiff.

57.    Additionally, a free exercise violation occurs when the government has expressed hostility to the religious exercise it burdens.  *Id.* at 525 n.1 (quoting *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 639 (2018)).

ANSWER:    Defendants note that the cited decisional law speaks for itself, note that its proper interpretation is a matter for the courts, and deny that Defendants have violated Plaintiff's rights under this or any legal standard.

58.     The comments by Defendant Soto particularly evince hostility towards Ms. Castro's Catholic faith.  On two occasions, he insinuated her crucifix was an "idol" not fit for worship.  When Ms. Castro resisted removing the crucifix, Defendant Soto stated that she must do so to properly "live out [her] faith."  He also exhorted her to "give Caesar what is Caesar's."

ANSWER:     Defendants deny the first sentence of Paragraph 58, and deny the remaining allegations in Paragraph 58 based on the answers to Paragraph 26 and 33 of the Complaint.

59.     Accordingly, Defendants have violated and continue to violate Ms. Castro's federal constitutional rights to freely exercise her religion.  She prays for prospective injunctive relief against all defendants as authorized by 42 U.S.C. § 1983.

ANSWER:     Defendants deny that they have violated Plaintiff's rights, and deny the claim that she is entitled to injunctive relief.

60.     Furthermore, Defendant Gasper has the unilateral authority to begin termination proceedings against Ms. Castro under the provisions of Conn. Gen. Stat. § 10-151(d).

ANSWER:     Admitted.

61.     As previously alleged, Defendant Gasper has and continues to violate Ms. Castro's federal constitutional rights to freely exercise her religion.  Ms. Castro has a reasonable fear that, absent injunctive relief, Defendant Gasper will initiate termination proceedings against her for insubordination.

ANSWER:     Denied.

62.     Ms. Castro thus prays for prospective injunctive relief against Defendant Gasper as authorized by 42 U.S.C. § 1983.

ANSWER:     Denied.

## COUNT II – VIOLATION OF FEDERAL CONSTITUTIONAL RIGHT TO FREE SPEECH AGAINST ALL DEFENDANTS

63.     Ms. Castro hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth herein.

ANSWER:     Defendants restate and reincorporate by reference all of its forgoing answers and responses to the preceding paragraphs of the Complaint as if set forth herein.

64.     Defendants, acting under color of state law, have violated and continue to violate Ms. Castro's federal constitutional right to free speech, rendering Defendants liable under 42 U.S.C. § 1983.

22228075

ANSWER:    Denied.

65.    Made applicable to state actors by the Fourteenth Amendment, the First Amendment protects freedom of speech. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925).

ANSWER:    Defendants admit that the First Amendment applies to state actors, but deny that Defendants have violated Plaintiff's rights under this or any provision.

66.    Religious expression is protected by the Free Speech Clause of the First Amendment. *Kennedy*, 597 U.S. at 523–524.

ANSWER:    Defendants admit that the Supreme Court has stated this general principle in certain First Amendment decisions, but deny that Defendants have violated Plaintiff's rights under this or any provision or theory.

67.    Public employees such as school teachers retain free speech rights to personal expression even when on school grounds and during teaching hours.  Government officials violate those rights when they prohibit private expression without adequate justification. *Kennedy*, 597 U.S. at 527–528.

ANSWER:    Defendants admit that the Supreme Court has stated these general principles in certain First Amendment decisions, but Defendants deny that Plaintiff's alleged "free speech" was actionable under the First Amendment in these circumstances and deny that Defendants have violated Plaintiff's rights under these or any principles.

68.    Expression is private when it is not within the ordinary scope of duty or otherwise does not owe its existence to the government. *Id.* at 529.

ANSWER:    Defendants note that the cited decisional law speaks for itself, note that its proper interpretation is a matter for the courts, and deny that Plaintiff's alleged "[e]xpression" was actionable under the First Amendment in these circumstances.

69.    Defendants unconstitutionally prohibited Ms. Castro from displaying her crucifix in her personal space, a prototypical act of private speech.

ANSWER:    Denied.

70.    Defendants have not offered a valid justification for suppressing Ms. Castro's private speech.  Erroneous over-enforcement of the Establishment Clause is not a valid justification for restricting private religious speech. *See id.* at 532–536.  Nor is a concern that students or other staff would take offense at the sight of religious expression. *Id.* at 538.

ANSWER:    Defendants note that the cited decisional law speaks for itself, note that its proper interpretation is a matter for the courts, deny any implication that Defendants have engaged in "[e]rroneous over-enforcement of the Establishment Clause," deny that Defendants have violated Plaintiff's rights under these or any principles, and otherwise deny the allegations in Paragraph 70.

71.    Accordingly, Defendants have violated and continue to violate Ms. Castro's federal constitutional rights to free speech. She prays for prospective injunctive relief against all defendants as authorized by 42 U.S.C. § 1983.

ANSWER:    Denied.

72.    Furthermore, Defendant Gasper has the unilateral authority to begin termination proceedings against Ms. Castro under the provisions of Conn. Gen. Stat. § 10-151(d).

ANSWER:    Admitted.

73.    As previously alleged, Defendant Gasper has and continues to violate Ms.

Castro's federal constitutional rights to free speech. Ms. Castro has a reasonable fear that, absent injunctive relief, Defendant Gasper will initiate termination proceedings against her for insubordination.

ANSWER:    Denied.

74.    Ms. Castro thus prays for prospective injunctive relief against Defendant Gasper as authorized by 42 U.S.C. § 1983.

ANSWER:    Denied.

**COUNT III – VIOLATION OF CONNECTICUT'S ACT CONCERNING RELIGIOUS FREEDOM AGAINST ALL DEFENDANTS**

75.    Ms. Castro hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth herein.

ANSWER:    Defendants restate and reincorporate by reference all of its forgoing answers and responses to the preceding paragraphs of the Complaint as if set forth herein.

76.    By statute, Connecticut prohibits all its political subdivisions—including their officers or employees—from burdening someone's religious exercise, unless the government actor demonstrates that it has used "the least restrictive means" of furthering "a compelling government interest." Conn. Gen. Stat. § 52-571b(a)–(b), (f).

ANSWER:    Defendants note that § 52-571b speaks for itself, note that its proper interpretation is a matter for the courts, and deny any implication that they violated Plaintiff's rights under this statute.

77.    Defendants have burdened Ms. Castro's sincere religious practice. For her peace of mind and spirit, Ms. Castro has long placed a crucifix beside her desk. The District put her to a choice: remove the crucifix or face discipline. Since Ms. Castro was unwilling to compromise her religious exercise: Defendants Mazzei and Soto began disciplinary proceedings against her; Defendant Manning suspended her without pay for two days and then placed her on indefinite administrative leave; and Defendant Gasper confirmed the administrative leave. Defendants have thus punished and continue to punish Ms. Castro for her religious practice, all for placing a crucifix beside her desk for her personal prayer and reflection.

ANSWER:    Defendants admit that Plaintiff was required to move the crucifix off the classroom wall, that Plaintiff would not remove the crucifix from the classroom wall, that she was suspended without pay for two days, and she was placed on paid administrative leave. Defendants deny the remaining allegations in Paragraph 77.

78.    Defendants cannot state a compelling government interest in precluding Ms. Castro from displaying a crucifix in her private workspace. In their communications with Ms. Castro, Defendants have repeatedly stated just one reason for their actions—a concern that Ms. Castro's expression would make the school appear to endorse religion. But the Supreme Court has rejected that erroneous understanding of the Establishment Clause. *See Kennedy*, 597 U.S. at 532–536. And Defendants have offered no other reason, let alone a compelling one, to justify punishing Ms. Castro for displaying a crucifix in her private workspace.

ANSWER:    Denied.

79.    Accordingly, Defendants have and continue to violate Connecticut's Act Concerning Religious Freedom.

ANSWER:    Denied.

80.    Ms. Castro prays for prospective injunctive relief against all defendants as authorized by Conn. Gen. Stat. § 52-571b(c), (f).

ANSWER:    Defendants admit that Plaintiff seeks injunctive relief, but denies that she is entitled to such relief.

81.    Furthermore, Defendant Gasper has the unilateral authority to begin termination proceedings against Ms. Castro under the provisions of Conn. Gen. Stat. § 10-151(d).

ANSWER:    Admitted.

82.    As previously alleged, Defendant Gasper has and continues to violate Connecticut's Act Concerning Religious Freedom. Ms. Castro has a reasonable fear that, absent injunctive relief, Defendant Gasper will initiate termination proceedings against her.

ANSWER:    Denied.

83.    Ms. Castro thus prays for prospective injunctive relief against Defendant Gasper as authorized by Conn. Gen. Stat. § 52-571b(c), (f).

ANSWER:    Defendants admit that Plaintiff seeks injunctive relief, but denies that Plaintiff is entitled to such relief.

## REQUEST FOR ATTORNEYS FEES & COSTS

84.    Ms. Castro is entitled to recover reasonable attorneys fees and costs under 42 U.S.C. § 1988(b), in an amount to be proven at trial.

ANSWER:    Denied.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Castro hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth herein, and prays for relief as follows:

- Equitable relief enjoining Defendants or their agents from suspending, re-assigning, or otherwise disciplining Ms. Castro in any way for hanging her crucifix on her classroom wall aside her desk, in the same location as it was prior;

- A mandatory injunction against Defendants and their agents requiring them to take Ms. Castro off of administrative leave and assign her to return to full-time teaching, without any condition that she cease hanging her crucifix on her classroom wall aside her desk in the same location as it was prior;

- A mandatory injunction against Defendants and their agents requiring them to expunge any and all disciplinary records from Ms. Castro's files concerning her refusal to cease hanging her crucifix on her classroom wall aside her desk;

- Equitable relief enjoining Defendants and their agents from participating in any process of terminating Ms. Castro's contract as a tenured teacher with the Consolidated School District of New Britain based on her display of a crucifix;

- A declaratory judgment that the actions of Defendants and their agents in disciplining Ms. Castro for her refusal to remove the crucifix from the wall aside her desk violate the United States Constitution and Connecticut law;

- Costs & attorneys fees;

- Any other relief deemed appropriate by this Court.

**ANSWER** Defendants deny that Plaintiff is entitled to relief requested in the Prayer for Relief, or any relief whatsoever.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**: Plaintiff's request for injunctive relief should be denied because Plaintiff fails to establish any legal violation for which this relief can or should be provided.

**Second Affirmative Defense**: Plaintiff's request for declaratory relief should be denied because Plaintiff fails to establish any legal violation for which this relief can or should be provided.

**Third Affirmative Defense**: Any relief is foreclosed under the legal framework specific to First Amendment challenges to regulation of public employees' expression, which also provides the exclusive standard of review for all of Plaintiff's claims.

**Fourth Affirmative Defense**: The challenged actions satisfied strict scrutiny, insofar as applicable, because Defendants acted in furtherance of the District's compelling interest to avoid an Establishment Clause violation and their actions were narrowly tailored to achieving that interest.

**Fifth Affirmative Defense**: Because Defendants undertook the challenged actions to avoid, at a minimum, an objectively substantial risk of an Establishment Clause violation, this conduct cannot subject them to any of the relief sought in the complaint.

**Sixth Affirmative Defense**: Because Defendants did not substantially burden Plaintiff's sincerely held religious beliefs or practice, the challenged conduct is not actionable under Conn. Gen. Stat. § 52-571b.

**Seventh Affirmative Defense**: The balance of equities and the public interest outweigh any harm to Plaintiff from the absence of an injunction and therefore preclude any form of injunctive or declaratory relief to Plaintiff.

**Eighth Affirmative Defense**: The individual Defendants have not violated any clearly established constitutional or statutory right about which a reasonable person would have known and therefore are entitled to qualified immunity from any or all monetary liability that Plaintiff may pursue at any stage of this case.

**Additional Defenses**: Defendants deny any allegations in the complaint that are not specifically admitted, have not knowingly or voluntarily waived any applicable defenses for which any party bears the burden of proof, and reserve the right to assert such additional defenses as may become available or apparent as the case progresses.

DEFENDANTS,


By     /s/ *Peter J. Murphy*

     Peter J. Murphy (ct26825)
     Eric Del Pozo (ct31359)
     Sarah N. Niemiroski (ct31281)
     For Shipman & Goodwin LLP
     One Constitution Plaza
     Hartford, CT  06103-1919
     Telephone: (860) 251-5070
     Facsimile: (860) 251-5316
     pjmurphy@goodwin.com
     edelpozo@goodwin.com
     sniemiroski@goodwin.com
Its Attorneys

22228075